ROBERT J. ROSATI #112006
e-mail: robert@erisalg.com
6485 N. Palm Ave.
Fresno, California 93704
Telephone:   (559) 478-4119
Facsimile:   (559) 478-5939

Attorney for Plaintiff, LAURENCE ELEP

UNITED STATES DISTRICT COURT FOR

THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| LAURENCE ELEP, | Case No.: |
| Plaintiff, | COMPLAINT |
| v. | |
| METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendant. | |

Plaintiff Laurence Elep ("Plaintiff" or "Elep") alleges as follows:

**JURISDICTION**

1.   Plaintiff's claim for relief arises under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. section 1132(a)(1). Pursuant to 29 U.S.C. section 1331, this court has jurisdiction over this action because this action arises under the laws of the United States of America. 29 U.S.C. section 1132(e)(1) provides for federal district court jurisdiction of this action.

///

///

///

COMPLAINT                                           -1-

**VENUE**

2. Venue is proper in the Eastern District of California, in that Plaintiff is and was a resident of the city of Fresno, in the county of Fresno, and in the state of California, when Defendant terminated Plaintiff's long-term disability benefits. Therefore, 29 U.S.C. section 1132(e)(2) provides for venue in this court.

**INTRADISTRICT ASSIGNMENT**

3. This civil action, which arose in Fresno County, is properly assigned to the Fresno Division.

**PARTIES**

4. Plaintiff is, and at all times relevant hereto was, a participant, as that term is defined by 29 U.S.C. section 1002(7), of the Kaiser Foundation Health Plan, Inc. ("The Plan") and thereby entitled to receive long term disability ("LTD") benefits therefrom. Plaintiff was a participant because he was an employee of Kaiser Foundation, ("Kaiser"), for whose employees benefit The Plan was established.

5. Defendant Metropolitan Life Insurance Company ("MetLife") issued Group Policy No. 95910-1-G ("The Policy") to Kaiser and thereby insured The Plan, is obligated to pay all LTD benefits claimed, and acted on behalf of The Plan in all matters alleged herein.

6. The Plan is an employee welfare benefit plan organized and operating under the provisions of ERISA, 29, U.S.C. section 1001 *et seq*.

**CLAIM FOR RELIEF**

7. The Policy provides long term disability benefits after an elimination period of 90 days, for a which a person under the age of 60 at the time the disability occurred, as was Plaintiff herein, such benefits potentially could continue for 60 months

8. The Policy provides, in part, as follows:

    A.    Disabled means:

"During the Elimination Period and the next 24 months, You are unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue Your Usual Occupation in the usual and customary way.

After such period, You are unable to engage with reasonable continuity in any occupation in which You could reasonably be expected to perform satisfactorily in light of Your:
* age;
* education;
* training;
* experience;
* station in life; and
* physical and mental capacity

that exists within any of the following locations:
* a reasonable distance or travel from Your residence in light of commuting practices of Your community;
* a distance of travel time equivalent to the distance travel time You traveled to work before becoming disabled; or
* the regional labor market, if You reside or resided prior to becoming disabled in a metropolitan area."

    B.    Partially Disabled is defined as:

"While actually working in an occupation, You are unable to earn 80% of Your Predisability Earnings.

If You are Partially Disabled and have received a Monthly Benefit for 12 months, We will adjust Your Predisability Earnings only for the purposes of determining whether You continue to be Partially Disabled and for calculating the Return to Work Incentive, if any.  We will make the initial adjustment as follows:

We will add to Your Predisability Earnings an amount equal to the product of:

* Your Predisability Earnings times

* the annual rate of increase in the Consumer Price Index for the prior calendar year.

Annually thereafter, We will add an amount to Your adjusted Predisability Earnings calculated by the method set forth above but substituting Your adjusted Predisability Earnings from the prior year for Your Predisability Earnings.  **This adjustment is not a cost of living benefit.**

For purposes of determining whether the Disability whether a Disability is the direct result of an injury, the Disability must have occurred within 90 days of the injury and not a result of Sickness.

If Your occupation requires a license, the fact that You

COMPLAINT      -3-

1       lose Your license for any reason will not, in itself
2       constitute Disability."

3   9.  The definitions of "totally disabled" are superceded by saved-from-preemption
4 standards of California law, as set forth in Paragraph 10, below.

5   10.  MetLife failed and refused to apply the proper standard of "disabled."
6 Notwithstanding the specific language of The Policy, as alleged in Paragraphs 8, California law
7 mandates that disability within the meaning of the term "any occupation" as contained in a general
8 disability clause, is that which prevents the insured from engaging in any occupation or performing
9 any work for compensation and which prevents him from working with reasonable continuity in him
10 customary occupation or in any other occupation in which he might reasonably be expected to
11 engage in view of him station in life and physical and mental capacity, age, education, training and
12 experience, and that an insurance policy may not use a more restrictive standard.

13   11.  Plaintiff was employed by Kaiser as a Registered Nurse.

14   12.  Elep is disabled by co-morbid conditions including constant low back pain,
15 sometimes with spasms, and impaired sleep and cognition due to medication side effects and pain,
16 and fatigue due to medication side effects, pain, and impaired sleep, and consequential other issues.

17   13.  By letter dated April 28, 2014, MetLife approved Elep's claim for total disability
18 LTD benefits, acknowledging a date of disability of August 5, 2013.

19   14.  By letter September 16, 2015, MetLife first terminated Elep's LTD benefits
20 termination.

21   15.  By letter dated February 22, 2016, Elep appealed the first termination of his LTD
22 benefits.

23   16.  During the first appeal, MetLife's Dr. Randy Rummler provided an April 8, 2016
24 "Physician Consultant Review," in which he concluded the "information supports functional
25 impairment" for the time evaluated.

26   17.  During the first appeal, MetLife's Dr. Neil McPhee, provided an April 14, 2016,
27 Physician Consultant Review for MetLife Disability," performed a file review of Elep's claim.  In
28 the review he noted Elep experienced consistent, chronic pain, findings of persistent tenderness at

the sacroiliac joints, x-rays showing arthritic change involving the upper portion of both the right and left SI joints as well as moderate irregularity to the joint spaces, and failure of significant improvement with physical therapy and injection treatments.

18. By letter dated April 20, 2016, MetLife reinstated Elep's LTD benefits, November 3, 2015, because Elep met the definition of total disability from any occupation. The letter further stated that Elep was eligible for continued benefits through November 2, 2018, which was also the maximum duration of the LTD claim. .

19. On August 24, 2016, MetLife's Medical Director Dr. Karen M. Meissler, conducted a further file review of Elep's claim and she opined that the medical information did not support functional limitations beyond July 26, 2016.

20. By letter dated October 3, 2016, MetLife terminated Elep's LTD benefits (second termination). The termination letter stated that Elep could appeal.

21. On February 13, 2017, Elep completed a Disability Appeal Request form provided by MetLife and appealed the second termination of his benefits.

22. During the course of its appeal review, MetLife's Dr. Dennis S. Gordan conducted a file review on behalf of MetLife and on March 27, 2017, opined that:

    A. Elep should avoid activities that would provoke severe pain and with it, possible syncope.

    B. Elep should avoid twisting, bending or stooping.

    C. Elep could lift, push, and pull up to 10 pounds intermittently and up to 20 pounds rarely, all while seated. His use of a cane limits his ability to do any of these with both hands, so Dr. Gordan estimated Elep could carry 10 pounds occasionally with the hand that does not use the cane.

    D. "He can sit for up to 8 hours a day with the ability to take breaks every 20 minutes to stretch. He can stand and walk intermittently. He should not work in an environment where loss of consciousness would be more dangerous than living at home independently."

    E. Dr. Gordan was asked if the clinical evidence supported any

restrictions/limitations, or side effects resulting from medications based on the medical documentation and "telephone consultation." Dr. Gordan opined that there was no evidence of side effects resulting from medication, and that he "could not speak with Dr. Kumar."

23. During the course of the appeal on behalf of MetLife on March 27, 2017, Dr. Marcus Goldman performed a file review and opined the medical information did not support functional limitations.

24. MetLife's Susan M. Sineni performed a vocational analysis on April 7, 2017, as part of Elep's second appeal review. She was provided the definition of disability, Dr. Gordan (misspelled in the report as Dr. Gordon) and Dr. Goldman's reports. Ms. Sineni reported that Elep, within the restrictions and limitations, she referenced from Dr. Gordan and Dr. Goldman, could work as a Utilization Review Coordinator, Nurse Case Manager, and Advice Nurse.

25. By letter dated April 13, 2017, MetLife denied Elep's second appeal.

26. MetLife has regularly used Drs. Gordan and Goldman as reviewing physicians and each has routinely provided opinions that are economically favorable to MetLife.

27. At all times mentioned herein Plaintiff was, and continues to be, totally disabled under The Policy's definition of totally disabled, as properly construed.

28. Plaintiff has exhausted all administrative remedies required to be exhausted by his by virtue of the facts alleged herein.

29. MetLife and The Plan are required to provide claimants full and fair reviews of their claims for benefits pursuant to 29 U.S.C. section 1133 and its implementing Regulations. Specifically:

    A. The Secretary of Labor has adopted Regulations to implement the requirements of 29 U.S.C. section 1133. These Regulations are set forth in 29 C.F.R. section 2560.503-1 and provide, as relevant here, that employee benefit plans shall establish and maintain reasonable procedures governing the filing of benefit claims, notifications of benefit determinations, and appeal of adverse benefit determinations and that such procedures shall be deemed

reasonable only if:

    i. Such procedures comply with the specifications of the Regulations.

    ii. The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, The Plan provisions have been applied consistently with respect to similarly situated claimants.

    iii. Written notice is given regarding an adverse determination (i.e., denial or termination of benefits) which includes: the specific reason or reasons for the adverse determination; with reference to the specific plan provisions on which the determination is based; a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; a description of the Plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of ERISA following a denial on review; if an internal rule, guideline, protocol, or similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

    iv. Plans are required to provide a full and fair review of any adverse determination which includes:

        a. That a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents,

        records, and other information relevant to the claimant's claim for benefits.

    b.    A document, record, or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information: (1) was relied upon in making the benefit determination; (2) was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination; (3) demonstrates compliance with the administrative processes and safeguards required pursuant to the Regulations in making the benefit determination; or (4) constitutes a statement of policy or guidance with respect to the Plan concerning the denied benefit without regard to whether such statement was relied upon in making the benefit determination.

    c.    The Regulations further provide that for a review that takes into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

    d.    The Regulations further provide that, in deciding an appeal of any adverse determination that is based in whole or in part on a medical judgment that the appropriate named fiduciary shall consult with a healthcare professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

    e.    The Regulations further require a review that does not afford deference to the initial adverse benefit determination and that

        is conducted by an appropriate named fiduciary of the Plan who is neither the individual who made the adverse benefit determination that is the subject of the appeal nor the subordinate of such individual.

   f. The Regulations further provide that a healthcare professional engaged for the purposes of a consultation for an appeal of an adverse determination shall be an individual who is neither the individual who was consulted in connection adverse benefit determination which was the subject of the appeal nor the subordinate of any such individual.

30. MetLife denied Plaintiff a full and fair review of his claim for LTD benefits:

  A. MetLife does not have claims procedures which contain administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with governing plan documents and that, where appropriate, plan provisions have been applied consistently with respect to similarly situated claimants.

  B. MetLife, when terminating Plaintiff's claim for LTD benefits, did not provide a description of the additional material or information necessary for Plaintiff to perfect her claim or an explanation of why such material or information was necessary.

  C. MetLife failed and refused to provide any and all relevant documents to Plaintiff for use in his appeal.

  D. Elep, through counsel, requested that MetLife provide him with copies of all documents, records, or other information "relevant" to his claim, as that term is defined by ERISA regulations.  MetLife failed and refused to provide him with any and all such documents records and other information, including, but not limited to:

   i. Any internal rule, guideline, protocol, or other similar criterion that

was relied upon in making the adverse determination;

ii. Claims procedures that contain administrative processes and safeguards designed to insure and to verify that benefit claims determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

G. Saved from preemption California insurance laws and standards require MetLife to adopt and implement California specific rules, guidelines, protocols, or other criterion, or statements of policy or guidance with respect to all claimants who reside in California. Either MetLife failed to do so, in violation of California law, or MetLife failed and refuse to provide said rules, guidelines, protocols, or other criterion, or statements of policy or guidance to Williams, in violation of ERISA.

H. Defendant MetLife otherwise violated the Regulations and inconsistent with the terms of The Policy and ERISA.

Therefore, every evaluation and conclusion Metlife reached terminating Plaintiff's LTD benefits was arbitrary and capricious.

31. This Court is required to review the termination of Plaintiff's benefits de novo because:

A. Although the Policy grants Metlife discretion;

B. The Policy's discretionary clause is void and unenforceable due to California Insurance Code Section 10110.6 because The Policy:

i. provides life insurance or disability insurance coverage,

ii. for California residents, including Plaintiff, and

iii. has renewed–i.e., continued in force after The Policy's anniversary date,

iv. after the effective date of Insurance Code Section 10110.6.

C. Metlife failed and refused to decide Williams's appeal of its termination of

her benefits.

32. Alternatively, if for any reason the Court concludes that review is for abuse of discretion, then this Court should review Defendant's decision with limited deference because:

    A. MetLife is both the administrator and the funding source for benefits under The Policy, and therefore has a conflict of interest;

    B. MetLife failed to comply with ERISA's procedural requirements regarding benefit claims procedures and full and fair review of benefit claim denials as set forth in above;

    C. MetLife failed to apply the proper criteria for determining whether Plaintiff was totally disabled, as required by California law, as alleged in this Complaint.

    D. MetLife's decision-making was influenced by its financial conflict of interest.

33. Defendant MetLife's termination of Plaintiff's long-term disability benefits was arbitrary and capricious, an abuse of discretion, and a violation of the terms of The Policy.

34. An actual controversy has arisen and now exists between Plaintiff and Defendant MetLife with respect to whether Plaintiff is entitled to long-term disability benefits under The Policy.

35. Plaintiff contends, and Defendant MetLife disputes, that Plaintiff is entitled to benefits under the terms of The Policy for long-term disability because Plaintiff contends, and Defendant MetLife disputes, that Plaintiff is and was totally disabled at all relevant times.

36. Plaintiff desires a judicial determination of her rights and a declaration as to which party's contention is correct, together with a declaration that MetLife is obligated to pay long-term disability benefits, under the terms of The Policy, retroactive to the first day his benefits were not paid, until and unless such time that Plaintiff is no longer eligible for such benefits under the terms of The Policy.

37. A judicial determination of these issues is necessary and appropriate at this time under the circumstances described herein in order that the parties may ascertain their respective rights and duties, avoid a multiplicity of actions between the parties and their privities, and promote

1 judicial efficiency.

2   38.   As a proximate result of Defendant MetLife's wrongful conduct as alleged herein, Plaintiff was required to obtain the services of counsel to obtain the benefits to which he is entitled under the terms of The Policy. Pursuant to 29 U.S.C. section 1132(g)(1), Plaintiff requests an award of attorney's fees and expenses as compensation for costs and legal fees incurred to pursue Plaintiff's rights.

   WHEREFORE, Plaintiff prays judgment as follows:

   1.   For declaratory judgment against Defendant, requiring Metlife to (a) pay long-term disability benefits under the terms of The Policy to Plaintiff for the period to which he is entitled to such benefits, with prejudgment interest on all unpaid benefits, until it is determined that Plaintiff is no longer eligible for benefits under the terms of The Policy.

   2.   For attorney's fees pursuant to statute.

   3.   For costs of suit incurred.

   4.   For such other and further relief as the Court deems just and proper.


Dated: May 31, 2017                    /s/ Robert J. Rosati
                                       ROBERT J. ROSATI
                                       Attorney for Plaintiff,
                                       Laurence Elep